1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **CENTRAL DISTRICT OF CALIFORNIA**

10

11   SHEILA M. JOHNSON,              )   NO. CV 07-7263 SS
                                     )
12                  Plaintiff,       )
                                     )   **MEMORANDUM DECISION AND ORDER**
13            v.                     )
                                     )
14   MICHAEL J. ASTRUE,              )
     Commissioner of the Social      )
15   Security Administration,        )
                                     )
16                  Defendant.       )
     _____)

17

18                                   **I.**

19                            **INTRODUCTION**

20

21        Sheila M. Johnson("Plaintiff") brings this action seeking to

22   overturn the decision of the Commissioner of the Social Security

23   Administration (hereinafter the "Commissioner" or the "Agency") denying

24   her application for Disability Insurance Benefits ("DIB") and

25   Supplemental Security Income ("SSI").  The parties consented, pursuant

26   to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United

27   States Magistrate Judge.  For the reasons stated below, the decision of

28   the Commissioner is REVERSED and REMANDED.

## II.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on May 8, 2001 (Administrative Record ("AR") 72-81).  She alleged a disability onset date of June 1, 1996 (AR 72) due to bleeding hemorrhoids, anemia, Lupus, and pain in her back, neck, leg and right side of her body.  (AR 30, 55).

The Agency denied Plaintiff's claim for SSI initially on October 18, 2001.  (AR 54).  On September 17, 2002, Administrative Law Judge ("ALJ") Ariel Sotolongo conducted a hearing to review Plaintiff's claim. (AR 65).  The ALJ denied benefits on December 19, 2002.  (AR 19-23). Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied her request on November 10, 2003.  (AR 5).

Thereafter, Plaintiff sought judicial review of the ALJ's decision. (AR 311-23).  On October 27, 2004, this Court reversed and remanded the matter for further administrative proceedings on the grounds that the ALJ improperly evaluated Plaintiff's credibility, and the ALJ erroneously relied upon the opinion of the consultative examiner.  (AR 321-23).

On December 22, 2003, Plaintiff filed an application for Disability Insurance Benefits ("DIB").  (AR 383-85).  On June 28, 2004, Plaintiff filed a second application for SSI.  (AR 378-82).  For both of these applications, Plaintiff alleged a disability onset date of January 1, 2000.  (AR 378, 383).  On August 15, 2004, the Commissioner denied the

application for benefits.    (AR 365-69).    On September 14, 2004,
Plaintiff requested a hearing before an ALJ.  (AR 307).

    ALJ Alexander Weir III consolidated all of Plaintiff's three filed
applications.  (AR 296-97).   On March 22, 2007, the ALJ held a remand
hearing, where Plaintiff, a vocational expert, and a medical expert
provided testimony.   (AR 550-602).    The ALJ issued an unfavorable
decision on March 28, 2007 again denying benefits.   (AR 293-305).
Plaintiff requested a review of the ALJ decision (AR 286), and the
Appeals Council denied review on September 26, 2007.  (AR 248-50).

    Therefore, the ALJ's decision became the final decision of the
Commissioner.    (Id.).    Plaintiff commenced the instant action on
November 13, 2007.

## III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

    To qualify for disability benefits, a claimant must demonstrate
a medically determinable physical or mental impairment that prevents him
from engaging in substantial gainful activity[1] and that is expected to
result in death or to last for a continuous period of at least twelve
months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing
42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant
incapable of performing the work he previously performed and incapable

---

        [1]   Substantial gainful activity means work that involves doing
significant and productive physical or mental duties and is done for pay
or profit.  20 C.F.R. §§ 404.1510, 416.910.

of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

    To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

    (1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

    (2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

    (3)  Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

    (4)  Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

    (5)  Is the claimant able to do any other work? If not, the claimant is found disabled.  If so, the claimant is found not disabled.

4

1

2    Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1),

3    416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th

4    Cir. 2001) (citations omitted).

5

6         The claimant has the burden of proof at steps one through four, and

7    the Commissioner has the burden of proof at step five.  Bustamante, 262

8    F.3d at 953-54.  If, at step four, the claimant meets his burden of

9    establishing an inability to perform past work, the Commissioner must

10   show that the claimant can perform some other work that exists in

11   "significant numbers" in the national economy, taking into account the

12   claimant's residual functional capacity ("RFC"),[2] age, education, and

13   work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at

14   721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may

15   do so by the testimony of a VE or by reference to the Medical-Vocational

16   Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2

17   (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157,

18   1162 (9th Cir. 2001).  When a claimant has both exertional (strength-

19   related) and nonexertional limitations, the Grids are inapplicable and

20   the ALJ must take the testimony of a VE.  Moore v. Apfel, 216 F.3d 864,

21   869 (9th Cir. 2000).

22   ///

23   ///

24   ///

25

26        [2]   Residual functional capacity is "the most [one] can still do
27   despite [one's] limitations" and represents an assessment "based on all
     the relevant evidence in [one's] case record."   20 C.F.R. §§
28   404.1545(a), 416.945(a).

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 304-05). At the first step, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since the filing date of her application. (AR 299). Next, he found that Plaintiff had the severe impairments of systemic lupus erythematosus[3] ("Lupus" or "SLE"), mild anemia, a history of knee and hip pain, a benign hard palette and hemorrhoids. (AR 299-302, 304).

At the third step, the ALJ found that the severe and non-severe impairments at step two did not meet or medically equal a listed impairment. (AR 302). Next, at step four, the ALJ found that Plaintiff could no longer perform her past work, but she retained the RFC to perform work with restrictions. (AR 302-04). The ALJ found that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours, and stand or walk for six hours, with normal breaks, in an eight hour day. (AR 304). The ALJ also found that

---

[3] Systemic lupus erythematosus ("Lupus")is defined as: "a chronic, remitting, relapsing, inflammatory, often febrile multisystemic disorder of connective tissue, accute or insidious in onset, characterized principally by involvement of the skin, . . . joints, kidneys, and serosal membranes. It is of unknown etiology, but it is thought to represent a failure of regulatory mechanisms of the autoimmune system, as suggested by the high level of numerous autoantibodies against nuclear and cyptoplasmic cellular components." Dorland's Illustrated Medical Dictionary, 1072 (30th ed. 2003).

6

she can push and pull commensurate with her lifting ability without any significant limitations.  (<u>Id.</u>).

Finally, at step five, the ALJ concluded that, based on Plaintiff's RFC and the testimony of the VE, Plaintiff could perform work her past relevant work as a cafeteria worker.  (<u>Id.</u>).  Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision.  (AR 305).

**V.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u>  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the

1  court may not substitute its judgment for that of the Commissioner.

2  Reddick, 157 F.3d at 720-21.

3

4                                    VI.

5                                DISCUSSION

6

7       Plaintiff contends that the ALJ erred by failing to consider

8  various instances in the medical record indicating periods of active

9  Lupus to assess Plaintiff's RFC. (Joint Stipulation ("Jt. Stip.") at

10 4-8). Plaintiff further argues that the ALJ erred by relying solely

11 upon the testimony of the medical expert to determine that Plaintiff's

12 Lupus is inactive. (Id.). For the reasons discussed below, the Court

13 agrees with Plaintiff's contention.

14

15      The medical record includes Plaintiff's clinical reports from over

16 a dozen visits to the Harbor UCLA Medical Center ("Harbor") from August

17 16, 2001 through March 25, 2004, due to her lupus. (AR 492-534).  On

18 August 16, 2001, the attending physician noted a possible diagnosis of

19 Lupus and indicated that Plaintiff reported symptoms of fatigue, pain,

20 and weakness. (AR 522-24). On March 1, 2002, the attending physician

21 stated that Plaintiff has "continual symptoms including anemia,

22 [decreased white blood cell] count, continual fatigue, and athryalgias.

23 (AR 514). The attending physician noted that Plaintiff exhibited

24 improved symptoms due to the Lupus medication on October 13, 2002.

25 However, from December 26, 2002 through August 14, 2003, the Harbor

26 clinical reports indicated extreme fatigue, myalgia or muscular pain,

27 and fatigue due to Lupus. (AR 501, 503, 506, 508).

28

                                   8

On November 11, 2003, the attending physician noted that Plaintiff still reported symptoms of fatigue and myalgia, but were "less than before." (AR 495). Plaintiff's Lupus was reported clinically stable on January 20, 2004. (AR 493). On March 25, 2004, the Harbor clinical report indicated that Plaintiff's Lupus was clinically quiescent. (AR 494).

On March 22, 2007, Dr. Harvey Alpern, a medical expert, testified at a hearing before ALJ Weir. (AR 557-65). After reviewing the medical record and hearing Plaintiff's testimony, Dr. Alpern indicated that Plaintiff's Lupus was quiescent or inactive. (AR 559). Dr. Alpern later testified that Lupus can "wax and wane," or go into remission for many years and later flare up. (AR 561-65). Thus, Dr. Alpern opined that Plaintiff retained the ability to perform work at a light RFC. (AR 561).

Here, the ALJ must consider whether Plaintiff is eligible for a closed period of disability during the instances where her Lupus was active. Under the regulations, a person is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 404.1505(a). In Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995), the court stated, "Occasional symptom-free periods- and even the sporadic ability to do work- are not inconsistent with disability."

Additionally, nonexamining physician's opinions "with nothing more" cannot constitute substantial evidence. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1042 (9th Cir. 1994). However, this does not mean that the opinions of nonexamining sources and medical advisors are entitled to "little" or no weight. <u>Id.</u> at 1041. Reports of a nonexamining advisor "need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." <u>Id.</u>

Moreover, the ALJ cannot "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1455-56 (9th Cir. 1984). <u>See also</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722-23 (9th Cir. 1998) (impermissible for ALJ to develop evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports").

Despite the existence of the Harbor clinical reports in the medical record, the ALJ relied upon the opinion of Dr. Alpern to determine that Plaintiff's Lupus was quiescent and treatable with appropriate medication. (AR 301). Thus, the ALJ opined that "although the claimant had SLE [Lupus] . . . the medical evidence did not indicate that the claimant would have limitations from this condition sufficient to meet or equal the criteria of a listed impairment." (<u>Id.</u>).

However, the Harbor clinical reports clearly demonstrate that Plaintiff suffered from Lupus or symptoms of Lupus from August 16, 2001 through November 11, 2003. (AR 495-524). This period of time is "not less than twelve months," and thus, the ALJ should have considered

10

whether Plaintiff qualified for SSI and DIB during this closed period of disability.  20 C.F.R. § 404.1505(a); <u>see also</u> <u>Lester v. Chater</u>, 81 F.3d at 833.  In assessing Plaintiff's RFC, the ALJ relied upon the testimony of Dr. Alpern, who had not considered all the relevant and material facts, namely the Harbor clinical reports.  (AR 301).  <u>Andrews v. Shalala</u>, 5 F.3d at 1041.  Thus, the ALJ erred by failing to address the Harbor clinical reports, which indicated that Plaintiff may have suffered from Lupus for approximately two years.  <u>Gallant v. Heckler</u>, 753 F.2d at 1455-56; <u>see also</u> <u>Reddick v. Chater</u>, 157 F.3d at 722-23.  Therefore, the ALJ's failure to consider whether Plaintiff was eligible for a closed period of disability warrants remand.

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

**VII.**

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further proceedings.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 2, 2008.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[4]  This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

12